# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-1013V
Filed: January 23, 2019

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ELLISA MORINE, | * | |
| | * | |
| Petitioner, | * | Vaccine Act; Fact Ruling; |
| v. | * | Six Month Residual Requirement; |
| | * | Influenza (Flu) Vaccine; Shoulder |
| SECRETARY OF HEALTH | * | Injury Related to Vaccine |
| AND HUMAN SERVICES, | * | Administration (SIRVA); Special |
| | * | Processing Unit (SPU) |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*Edward M. Kraus*, Law Offices of Chicago Kent, Chicago, IL, for petitioner.
*Heather Lynn Pearlman*, U.S. Department of Justice, Washington, DC, for respondent.

### ORDER DENYING RESPONDENT'S MOTION TO DISMISS AND FACT RULING ON SIX MONTH REQUIREMENT [1]

**Dorsey,** Chief Special Master:

On July 27, 2017, Elissa Morine ("Ms. Morine" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et. seq, (the "Vaccine Act" or "Program"). Petitioner alleges that she developed a left shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine on September 26, 2014. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

After a review of the petition and supporting documents, respondent filed a Motion to Dismiss, asserting that petitioner had not established that she suffered from the residual effects of her alleged vaccine-related injury for more than six months after

---

[1] The undersigned intends to post this order on the United States Court of Federal Claims' website. **This means the order will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this published order contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).
.

1

vaccination as required by the Vaccine Act.  Respondent's Motion to Dismiss; ECF No. 18.  For the reasons discussed herein, respondent's motion is **DENIED**.

### I.     Procedural History

On August 8, 2017, petitioner filed seven medical record exhibits as well as an affidavit and a Statement of Completion.  ECF Nos. 7-8.  After conducting a review of the records, on April 5, 2018, respondent filed a status report stating that "he is not amendable to settlement discussions and would like to defend the case."  ECF No. 17.

Accordingly, on June 4, 2018, respondent filed a Motion to Dismiss arguing that the "evidence does not support a finding that petitioner suffered the residual effects of her alleged SIRVA for more than six months after the administration of the vaccine."  Motion to Dismiss at 1.  Specifically, respondent asserted that contemporaneous medical records indicate that petitioner's alleged injury resolved in fewer than six months post-vaccination.  *Id*. at 8.

On August 1, 2018, petitioner filed her own supplemental affidavit as well as an affidavit from her husband.  Exhibits 9 and 10.  Then, on August 6, 2018, petitioner filed her response to the Motion to Dismiss ("Response").  ECF No. 24.  In it, petitioner argues that "[n]othing in the Vaccine Act or Vaccine Rules requires that every moment of the six month period be documented solely by contemporaneous medical records."  *Id*. at 7.  Petitioner argues that because she provided contemporaneous medical records establishing that she suffered from her alleged injury for more than four months as well as a reasonable explanation as to why she discontinued seeking medical care, the requirements of the Vaccine Act have been met.  *Id*. at 7-8.

### II.    Medical History

Prior to her vaccination, petitioner's medical history does not reflect any record of shoulder pain.  *See generally* Exhibit 1 at 1; Exhibit 3 at 41.[2]  On September 26, 2014, petitioner received a flu vaccination in her left deltoid.  Exhibit 1 at 7.[3]  In her affidavit, petitioner states that she felt a sharp pain that extended down the left side of her body at the time of vaccine administration.  Exhibit 7 at ¶ 6.  She further states that the pain continued for the remainder of the day.  *Id*.

On October 16, 2014, petitioner consulted with her primary care provider, Kolleen Marchand, who served as a physician's assistant at Westside Medical.  Exhibit 3 at 41.  The medical record documenting this consultation reveals that petitioner "states that she

---

[2]  Petitioner's medical history includes the removal of a ganglion cyst, back pain and scoliosis.

[3] Although the record of vaccination does not set forth the site of vaccine administration, respondent concedes, based on the numerous subsequent medical histories, that it was administered in petitioner's left arm.  Motion to Dismiss at n.2.

got a flu shot 3 weeks ago and at the time of the shot she had some shooting pains into her arm/hand and now it has just been very sore." *Id*. Petitioner was prescribed Prednisone and Ms. Marchand indicated that physical therapy and/or imaging would be considered for "possible injection related bursitis" if the medication proved ineffective. *Id*. at 42.

Petitioner returned to Ms. Marchand for a follow-up appointment on October 30, 2014. *Id*. at 39-40. During her visit, Ms. Morine complained of left shoulder pain that had been present for five weeks. *Id*. at 39. Accordingly, petitioner was referred to physical therapy and Ms. Marchand noted that magnetic resonance imaging (an "MRI") would be scheduled. *Id*. at 40.[4]

Ms. Morine attended physical therapy from November 11, 2014 through January 12, 2015. Exhibit 5. Notes documenting the initial physical therapy evaluation, which took place on November 10, 2014, indicate that petitioner received a flu shot in September and experienced pain and a decrease in range of motion of her left shoulder. *Id*. Ms. Morine rated her pain at a 7/10. *Id*. at 9.

Petitioner presented to Dr. Jonathan Donigan, an orthopedic specialist, on December 2, 2014 with the chief complaint of left shoulder pain subsequent to her flu shot. Exhibit 1 at 8. Dr. Donigan assessed petitioner with "left shoulder pain in the setting of injection" and determined that his findings were consistent with bursitis or tendonitis. *Id*.

Ms. Morine's last physical therapy appointment for her left shoulder took place on January 12, 2015. Exhibit 5 at 15. The physical therapy notes documenting this visit indicate that petitioner suffered from soreness "after doing too much." *Id*. Further, although she was making progress, petitioner was "still limited from returning fully to PLOF [prior level of function] . . ." *Id*. Although her continued participation in physical therapy was recommended, petitioner states that she was unable to proceed due to a lack of insurance coverage and difficulty securing care for her children during appointments. Exhibit 7 at ¶ 13; Exhibit 9 at ¶ 4. *See also* Exhibit 3 at 1 (explaining that her insurance "doesn't want to pay for any more physical therapy visits."). Despite terminating physical therapy, Ms. Morine states that she saw continued improvement as a result of following a home exercise program. Exhibit 9 at ¶ 5.

In a January 20, 2015 follow-up appointment with Dr. Donigan, it was noted that petitioner's shoulder pain was improving. Exhibit 1 at 4. The doctor's plan included physical therapy and it was noted that an MRI of petitioner's left shoulder would be ordered if petitioner's condition did not significantly improve. *Id*.[5] The records indicate

---

[4] Although petitioner was scheduled to undergo her MRI on November 19, 2014, she did not attend this appointment citing concerns over its cost. *See* Exhibit 3 at 4; Exhibit 9 at ¶ 4.

[5] In her supplemental affidavit, petitioner asserts that she did not pursue MRI testing "because my orthopedic doctor was fairly dismissive about my injury and the need for imaging." Exhibit 9 at ¶ 4.

3

that petitioner again presented to Dr. Donigan on February 5, 2015 due to shoulder pain. *Id*. at 5-6.

Although Ms. Morine presented to Westside Medical on April 9, June 1, June 3, and October 2, 2015, the medical records do not specifically document any contemporaneous complaints of left shoulder pain. *See* Exhibit 3 at 25-38.[6]

On January 20, 2016, Ms. Morine presented to Ms. Marchand at Westside Medical with a complaint of low back pain. Exhibit 3 at 22-24. As a result of this ailment, she participated in physical therapy from January 21, 2016 through February 29, 2016. Exhibit 2 at 7-23. At the time of her initial evaluation, petitioner denied any other pertinent medical problems. *Id*. at 7. Further, a January 25, 2016 medical note indicates that she denied "radiation of pain" into legs, down to the knee, down to the foot or into arms. Exhibit 3 at 19.

Petitioner's left shoulder injury was not specifically addressed again until March 10, 2016. Exhibit 3 at 2. On this date, petitioner sent an email to Ms. Marchand at Westside Medical stating that she had lingering muscle fatigue and shoulder discomfort. *Id*. Petitioner also stated her intention to seek compensation from the government and asked Ms. Marchand to write or sign a letter confirming that she still suffered from residual symptoms of the flu shot. *Id*. Ms. Marchand opined that "it would be more advantageous and appropriate to have the physical therapist write/sign it for you since they can tell specifically what the deficits or lingering problems are." *Id*. There is no indication that Ms. Morine sought written confirmation from a physical therapist. *Id*.

Petitioner again presented to Ms. Marchand on April 26, 2017 with the chief complaint of allergies. Exhibit 8 at 1. However, an addendum to this record indicates that the petitioner's chief complaint on this date was left shoulder pain. *Id*. at 4. Petitioner reported having a hard time strengthening it at the gym and noted that "it is much weaker than the left side." *Id*. Ms. Marchand discussed petitioner's symptoms with her and they discussed activity modifications she could try or possibly attending another round of physical therapy. *Id.* The addendum bears an electronic signature dated April 26, 2017, while the electric signature on the original note is dated June 10, 2017.

### III. <u>Affidavit Testimony Regarding Six Month Requirement</u>

As previously noted, despite Ms. Morine's various appointments at Westside Medical between April 9, 2015 and January 20, 2016, the medical records do not document any contemporaneous complaints of left shoulder pain during this period.[7] *See* Exhibit 3 at 22-38. However, in her supplemental affidavit, petitioner states that

---

[6] In addition to setting forth information such as the patient's name, date of birth and contact information, the medical records from Westside Medical also include a section entitled "Medical Condition" in the margin. "Shoulder Pain (Finding)" is consistently included in this section along with all other prior diagnoses for the visits on the dates referenced.

[7] Ms. Morine continued to participate in physical therapy until January 12, 2015.

she continued to experience intermittent pain and weakness in her left arm and shoulder. Exhibit 9 at ¶ 6. Further, petitioner explains that she did not specifically complain about her ongoing shoulder symptoms during these visits because she did not think that anything could be done. *Id*. at ¶ 7.

In her supplemental affidavit, petitioner also explains that her April 26, 2017 medical appointment with Ms. Marchand was scheduled to discuss a number of medical issues, including her residual shoulder symptoms. *Id*. at ¶ 9. Petitioner states that strengthening exercises for her shoulder as well as activity modification were recommended. *Id*.

### IV.   Discussion

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." 42 U.S.C. § 300aa–11(c)(1)(D)(i). The burden is on the petitioner to establish, by a preponderance of the evidence, the persistence of a vaccine-caused injury for longer than six months. *Song v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 61, 65–66, *aff'd*, 41 F.3d 1520 (Fed.Cir.1994). However, dismissal is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury. *See, e.g., Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015).

Although a petitioner cannot establish the length or ongoing nature of an injury merely through her self-assertion, the fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care).

Here, there appears to be no dispute that petitioner received the flu vaccine on September 26, 2014 and she must therefore show that her alleged injuries lasted more than six months after administration of the vaccine. *Herren*, 2014 WL 3889070, at *2; *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012)(dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset). Thus, petitioner must demonstrate by preponderant evidence that her injuries continued through March 26, 2015.

The medical records demonstrate that, in the immediate months following her flu vaccination, petitioner consistently sought treatment for her left shoulder injury. Indeed, petitioner's chief complaint during her October 16 and October 30, 2014 appointments

at Westside Medical was shoulder pain. Exhibit 3 at 39, 41. Additionally, petitioner attended physical therapy from November 10, 2014 through January 12, 2015 for this injury. *See generally* Exhibit 5. Further, petitioner consulted with an orthopedist about her shoulder pain on December 2, 2014, January 20, 2015, and again on February 5, 2015 – four months and ten days after vaccination. Exhibit 1 at 4-6, 8.

However, following petitioner's February 5, 2015 appointment with her orthopedist, there are no contemporaneous medical records documenting her shoulder injury until April 26, 2017. Nevertheless, petitioner's affidavits provide evidence that she continued to experience intermittent pain and weakness in her left arm and shoulder through at least March 26, 2015. *See generally* Exhibit 7; Exhibit 9. The undersigned finds that petitioner provided a credible explanation of why she did not broach her ongoing shoulder symptoms during her medical visits between April 9, 2015 and January 20, 2016. Specifically, she explained that she did not believe that anything further could be done to treat her injury. Exhibit 9 at ¶ 7. Given that the only definite course of treatment was physical therapy, this rationale is understandable. Indeed, petitioner continued to attend physical therapy until January 12, 2015. Exhibit 5 at 15. At the time of her last visit, petitioner still experienced soreness and it was determined that she was limited from returning fully to her prior level of function. *Id*.

This case represents a "close-call" in terms of finding whether Ms. Morine has suffered the residual effects of her injuries for more than six months. "In the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). What favors a ruling in petitioner's favor is not only the affidavit testimony, but also the medical record documenting petitioner's April 26, 2017 visit to her primary care provider. Exhibit 8 at 4. Petitioner states that this medical appointment was scheduled to discuss a number of medical issues that included her residual shoulder symptoms. Exhibit 9 at ¶ 7. Although this was the first time petitioner sought medical care for her left shoulder in over two years, and despite petitioner's proclamation that she would seek compensation from the government for her injury, the undersigned finds that, considering all of the facts and circumstances, the evidence preponderates in petitioner's favor.

This ruling is also consistent with the undersigned's knowledge of the clinical course of SIRVA, based on review of hundreds of cases. Generally, it takes longer than six months for symptoms associated with SIRVA to resolve. *See also* B. Atanasoff et al., *Shoulder injury related to vaccine administration (SIRVA)*, 28 Vaccine 8049, 8050 (2010) (noting "[r]eview of the available records showed that shoulder symptoms persisted . . . from six months to many years."). Court Exhibit I.

### V.    Conclusion

**Thus, the undersigned finds, based on the record as a whole, that petitioner has established that she suffered the residual effects of her vaccine-**

**related injury for at least six months as required by the Vaccine Act.  Therefore, Respondent's Motion to Dismiss is DENIED.**

**The parties are encouraged to consider an informal resolution of this claim. Accordingly, by no later than <u>Thursday, February 28, 2019</u>, petitioner shall communicate a demand to respondent and file a status report updating the court on the parties' settlement discussions.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master